IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Marvell Semiconductor, Inc., | § | |
| Marvell Asia Pte., Ltd., and | § | Hon. Leonard Davis |
| Marvell Intl., Ltd. | §, | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:07CV204 |
| | § | |
| Commonwealth Scientific and Industrial | § | |
| Research Organisation, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiffs Marvell Semiconductor, Inc., Marvell Asia Pte., Ltd., and Marvell Intl., Ltd.

(collectively "Plaintiffs" and/or "Marvell"), for its complaint against Defendant Commonwealth

Scientific and Industrial Research Organisation ("CSIRO"), alleges:

## NATURE OF ACTION

1.      Marvell seeks a declaratory judgment arising under the patent laws of the United

States, 35 U.S.C. § 101 et. seq., for a declaration that U.S. Patent No. 5,487,069, issued on

January 23, 1996, entitled "Wireless LAN" (the "'069 patent") is not infringed by Marvell,

and/or by any of Marvell's customers for its integrated circuits, chip sets, reference designs, and

other related products (hereinafter collectively the "802.11a/g WLAN products") compliant with

the standards 802.11a and/or 802.11g (hereinafter the "802.11a/g Standard"), and that the '069

patent is invalid and/or unenforceable.  A copy of the '069 patent is attached hereto as Exhibit A.

2.      Marvell also seeks declaratory relief, damages, and specific performance to

enforce CSIRO's commitments to grant licenses to the '069 patent on reasonable and non-

discriminatory ("RAND") terms.  As hereinafter alleged, CSIRO has encouraged a standard-

setting organization to incorporate CSIRO's patented technology into industry standards for wireless network products by committing to license that patent on RAND terms. However, CSIRO has breached its commitments, to which Marvell is a third party beneficiary, by demanding a royalty rate that exceeds RAND terms and by refusing to negotiate RAND royalty rates in good faith.

3.    Marvell seeks a judicial declaration that, by committing to license its '069 patent on RAND terms and refusing to negotiate a license on RAND terms in good faith, CSIRO has waived the right to seek injunctive relief to restrain the use of any technology covered by the '069 patent against Marvell and Marvell's customers. In the event Marvell is found to infringe the '069 patent and the '069 patent is found to be valid and enforceable, CSIRO's remedy is limited to recovery of a RAND royalty as determined by a court.

4.    In the event Marvell is found to infringe the '069 patent and the '069 patent is found to be valid and enforceable, Marvell seeks an order compelling specific performance and requiring that CSIRO grant Marvell and its customers a license under the '069 patent on RAND terms, and that the RAND terms must recognize that CSIRO has only one patent that is allegedly essential to practice the IEEE 802.11a/g Standard and that Marvell has already given consideration to other holders of patents essential to practice the IEEE 802.11a/g Standard on RAND terms.

## THE PARTIES

5.    Plaintiff Marvell Semiconductor, Inc. is a corporation organized and existing under the laws of the State of California and maintains its principal place of business at 5488 Marvell Lane, Santa Clara, California 95054. Marvell Semiconductor, Inc. designed for manufacture Marvell's 802.11 a/g WLAN products at issue in this action, and has entered into

indemnification agreements with one or more Marvell customers regarding infringement claims based on such products.

6.     Plaintiff Marvell Asia Pte., Ltd. is a corporation organized and existing under the laws of Singapore and maintains its principal place of business in Singapore.  Marvell Asia Pte., Ltd. has sold, sells and offers for sale Marvell's 802.11 a/g WLAN products at issue in this action, and has entered into indemnification agreements with one or more Marvell customers regarding infringement claims based on such products.

7.     Plaintiff Marvell Intl., Ltd. is a corporation organized and existing under the laws of Bermuda and maintains its principal place of business in Bermuda.  Marvell Intl., Ltd. is involved in the licensing for manufacture of Marvell's 802.11 a/g WLAN products at issue in this action and has entered into indemnification agreements with one or more Marvell customers regarding infringement claims based on such products.

8.     On information and belief, Defendant CSIRO is a corporate body established pursuant to the *Commonwealth Science and Industry Research Act 1949* of the Commonwealth of Australia and has a principal place of business at Limestone Avenue, Campbell ACT 2612, Australia.

9.     The U.S. Court of Appeals for the Federal Circuit determined that CSIRO is not immune from the jurisdiction of the federal or state courts of the United States under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a).  In particular, CSIRO has engaged and is engaging in commercial activities in the United States within the meaning of 28 U.S.C. § 1605(a), including licensing, seeking to profit from the '069 patent, and enforcing the '069 patent.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 with respect to claims arising under the Patent Act, 35 U.S.C. § 101 et seq., and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

11.    There is also diversity of citizenship between Marvell and CSIRO and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Therefore, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a).

12.    There is also supplemental jurisdiction between Marvell and CSIRO regarding Marvell's claims for declaratory judgment, declaration of license agreement, breach of contract, specific performance and promissory estoppel.  Therefore, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1367(a).

13.    This Court has personal jurisdiction over CSIRO, which has availed itself of the Texas courts by making in this Court claims of alleged infringement of the '069 patent, and on information and belief has entered into contracts with Texas residents, has recruited Texas residents for employment inside Texas, and has contacted, for the purposes of enforcing the '069 patent, Dell, Inc., a corporation that has its principle place of business in Texas.

14.    Venue is proper in this judicial district pursuant to *inter alia* 28 U.S.C. § 1391 (b) and (f).

## MARVELL'S RIGHT TO SEEK DECLARATORY RELIEF

15.    Marvell is the manufacturer of the products that are at the heart of CSIRO's patent infringement claims against Marvell's customers.  More specifically, it is Marvell's 802.11 a/g WLAN products that enable devices manufactured and sold by Marvell's customers to communicate by means of radio transmission.  Marvell has sold its 802.11a/g WLAN products to

various entities.  Marvell's customers purchase Marvell's 802.11 a/g WLAN products, incorporate them into customer devices, and do so, upon information and belief, in an unaltered form.

16.    As the manufacturer of the products that are at the heart of the disputes between CSIRO and Marvell's customers, Marvell has standing and the right to seek the declaratory relief sought in this Complaint against CSIRO by reason of (i) assertions of infringement of the '069 patent that have been made by or on behalf of CSIRO against customers of Marvell who have purchased 802.11a/g WLAN products from Marvell and who have the right to request and/or demand that Marvell indemnify and defend them against such infringement assertions, (ii) actions by CSIRO indicating that Marvell may need to obtain a license with respect to the '069 patent, and/or (iii) claims of infringement that have been made by or on behalf of CSIRO against other manufacturers of 802.11a/g WLAN products.

17.    CSIRO has asserted the '069 patent against Intel Corporation, who, like Marvell, on information and belief manufactures 802.11a/g WLAN products such as integrated circuits and chipsets for incorporation into its customers' products.  CSIRO has sought to enjoin Intel Corporation from manufacturing its 802.11a/g WLAN products.

18.    On or about May 9, 2005, Microsoft Corporation, Apple Computer, Inc., Hewlett-Packard Company, and Netgear, Inc. (the "Microsoft Plaintiffs") filed an action against CSIRO for declaratory judgment in the United States District Court for the Northern District of California (San Jose Division) entitled *Microsoft Corporation et. al. v. Commonwealth Scientific and Industrial Research Organisatio*n, Case No. C05 01894 MJJ (the "Microsoft Action").

19.    On or about September 22, 2006, CSIRO filed an Answer and Counterclaims in the Microsoft Action.  CSIRO's Counterclaims alleged that the Microsoft Plaintiffs, one or more

of which are customers of Marvell, infringed and continue to infringe the '069 Patent by among other acts using, selling, importing, and offering for sale various "products practicing the IEEE 802.11a and/or 802.11g standards; and inducement of others to manufacture, use, sell, import, and/or offer for sale products practicing the IEEE 802.11a and/or 802.11g standards." CSIRO sought to permanently enjoin one or more of the Microsoft Plaintiffs from selling, *inter alia*, products which include the 802.11a/g WLAN products.

20.    On September 25, 2006, CSIRO filed a Motion for Change of Venue to the United States District Court for the Eastern District of Texas. On or about December 11, 2006, the motion was granted, and the Microsoft Action is presently pending before this Court (Case No. 06-CV-549 (LED)).

21.    In response to a demand from one of the Microsoft Plaintiffs that Marvell indemnify it against CSIRO's Counterclaims to the extent that such claims are applicable to Marvell's 802.11a/g WLAN products, Marvell has acknowledged this demand and incurred costs in response to it.

22.    On or about December 22, 2006, CSIRO filed an action for patent infringement in this Court entitled *Commonwealth Scientific and Industrial Research Organisation v. Toshiba America Information Systems, Inc. et. al.*, Case No. 06-CV-550 (LED). A customer of Marvell was named as a defendant in that action (the "Toshiba Action"). In the Toshiba Action, CSIRO alleged that the defendants infringed and continue to infringe the '069 Patent by manufacturing, using, selling, importing, and offering for sale products practicing the IEEE 802.11a/g Standard. CSIRO sought to permanently enjoin one or more of the defendants from selling, *inter alia*, products which include the 802.11a/g WLAN products.

23.    In response to a demand for indemnification from one of the defendants in the

Toshiba Action, Marvell has acknowledged the demand and incurred costs in response to it.

24.     A number of customers of Marvell's 802.11a/g WLAN products, in addition to those customers requesting indemnification from Marvell, are parties to the Microsoft Action and the Toshiba Action.  Moreover, entities who may become customers of Marvell's 802.11a/g WLAN products are also parties to the Microsoft Action and the Toshiba Action.

25.     CSIRO's assertions of infringement against Marvell's customers will continue, to Marvell's detriment, unless and until this Court finds that the '069 patent is not infringed and is invalid and/or unenforceable.

26.     CSIRO has refused to provide Marvell with terms on which CSIRO would be willing to license Marvell under the '069 patent.  As a result, CSIRO has failed to fulfill its obligation to license Marvell and therefore maintained the threat that the enforcement of the '069 patent poses to Marvell and its customers.

27.     The interests of judicial economy will be served by allowing Marvell to pursue declaratory relief on behalf of itself and its customers for its 802.11a/g WLAN products, thereby minimizing the likelihood that additional actions will be brought by CSIRO against Marvell's customers.

28.     In view of:

(a)     CSIRO's assertions of infringement and bringing of lawsuits against Marvell's customers based on Marvell's 802.11a/g WLAN products;

(b)     CSIRO's attempt to enjoin Marvell's customers from making and selling products which incorporate Marvell's 802.11 a/g WLAN products;

(c)     Marvell's customers' rights to request and/or demand that Marvell defend and indemnify them against such assertions, and two such customers' demands that they be defended

and indemnified for such assertions of infringement;

(d)    CSIRO's assertions of infringement and bringing of lawsuit against at least one other manufacturer of chips and chipsets similar to the Marvell products at issue in CSIRO's lawsuits against Marvell customers.

(e)    CSIRO's refusal to fulfill its obligation to grant a license to its '069 patent to Marvell and to negotiate RAND royalty rates in good faith;

(f)    Marvell's belief that the '069 patent is not being infringed and is invalid and/or unenforceable; and

(g)    the interests of judicial economy;

there is an actual and substantial controversy of sufficient immediacy and reality between Marvell and CSIRO which is ripe for determination regarding *inter alia* the non-infringement and invalidity and/or unenforceability of the '069 patent, CSIRO's breach of its commitments to grant licenses under the '069 patent and to negotiate RAND terms, and CSIRO's attempt to enjoin Marvell's customers which is sufficient to warrant a judicial declaration of rights and duties by this Court.

## IEEE AND THE 802.11a/g STANDARD

29.    The Institute of Electrical and Electronics Engineers, Inc. ("IEEE") is a non-profit professional association, incorporated in the State of New York, formed for the advancement of technology.  More than a century ago, an IEEE predecessor organization formed what is now known as The Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA"), to develop global industry standards in a broad-range of industries.

30.    In 1949, the IEEE formed the IEEE Computer Society, an organization of computer professionals.  In 1980, the IEEE Computer Society formed an IEEE LAN MAN

Standards Committee ("IEEE LMSC") (initially called "IEEE Project 802"). Its purpose was and is to develop, enable and maintain networking standards and recommended practices for local and other area networks.

31.    Prior to 1998, the IEEE LAN MAN Standards Committee formed its IEEE P802.11 Working Group (also referred to as the "IEEE 802.11 Working Group") on wireless local area networks (or "wireless LAN" or "WLAN"). Upon information and belief, the IEEE 802.11 Working Group followed the policies and procedures established by the IEEE-SA, and it reported to the Standards Activity Board (SAB) of the IEEE Computer Society.

32.    Upon information and belief, throughout the relevant time period, the IEEE 802.11 Working Group adhered to the IEEE's well publicized "Patent Policy" ("IEEE Patent Policy") contained in the IEEE-SA Standards Board Bylaws. The January 1998 version of the IEEE Patent Policy includes the following:

> "IEEE standards may include the known use of patent(s), including patent applications, if there is technical justification in the opinion of the standards developing committee and provided the IEEE receives assurance from the patent holder that it will license applicants under reasonable terms and conditions for the purpose of implementing the standard. This assurance shall be provided without coercion and prior to approval of the standard (or reaffirmation when a patent becomes known after initial approval of the standard). This assurance shall be a letter that is in the form of either
>
> a)    A general disclaimer to the effect that the patentee will not enforce any of its present or future patent(s) whose use would be required to implement the proposed IEEE standard against any person or entity using the patent(s) to comply with the standard or
>
> b)    A statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination[.]"

Pursuant to the then applicable IEEE bylaws, such an assurance was made to all applicants.

33.    An assurance under subsection (b) of this Patent Policy is intended to act as an

agreement to grant a license under the identified patent(s) to all applicants.  Such an assurance

should be construed as an irrevocable waiver of all rights to claim patent infringement against

any applicant who has attempted in good faith to negotiate a license on RAND terms.

## CSIRO'S IRREVOCABLE ASSURANCE

34.    In October 1998, the IEEE P802.11 Working Group was considering an

amendment to the IEEE 802.11 Standard designated as "802.11a."  The IEEE 802.11 Working

Group acted on behalf of persons and entities, such as Marvell, that then or in the future would

be involved in the design, development and/or manufacture of wireless LAN products.

35.    Upon information and belief, prior to adoption of the 802.11a amendment, and

pursuant to the IEEE Patent Policy, on or about October 20, 1998, the chair of the IEEE 802.11

Working Group wrote to CSIRO requesting written assurance regarding CSIRO's patent(s) in

accordance with the IEEE Patent Policy.  In particular, IEEE requested either (1) a general

disclaimer that CSIRO would not enforce any of its present or future patents against any entity

practicing the 802.11a amendment to the IEEE 802.11 Standard; or (2) a statement that a license

would be made available to all applicants without compensation or under reasonable,

nondiscriminatory terms and conditions.

36.    On information and belief, by no later than November 15, 1998, CSIRO was

aware of and understood the IEEE Patent Policy.  In order to encourage the IEEE's adoption of

the 802.11a Standard, CSIRO accepted the entirety of that IEEE Patent Policy and its operation

with respect to the '069 patent, and CSIRO communicated that acceptance to the IEEE 802.11

Working Group, which was developing, considering and later adopted the 802.11a (and later

802.11g) amendment(s) to the IEEE 802.11 Standard.

37.    In particular, on or about December 4, 1998, Mr. Dennis Cooper, Chief of the

Telecommunications & Industrial Physics Division of CSIRO, replied in writing to the IEEE.

On information and belief, Mr. Cooper had authority to respond as he did on behalf of CSIRO.

Among other things, Mr. Cooper stated that "[f]rom the information available to CSIRO, it

would appear that the ['069] patent may be needed to implement the standards."  Mr. Cooper

further stated "[i]n the event the proposed standard is adopted and the standard cannot be

practiced without the use of the patent referenced above, CSIRO agrees upon written request to

grant a nonexclusive license under such patent on a non discriminatory basis and on reasonable

terms and conditions including its then-current royalty rates."

    38.    The IEEE accepted CSIRO's letter as an assurance that the '069 patent was or

would be licensed in accordance with the IEEE's Patent Policy.

    39.    The IEEE published the fact of CSIRO's assurance on the IEEE's Web Site at

http://standards.ieee.org/db/patents/pat802_11.html.

    40.    Relying in part upon this written assurance by CSIRO, the IEEE adopted and

promulgated IEEE Std. 802.11a-1999 in October 1999, and subsequently adopted IEEE Std.

802.11g-2003 in June 2003, as amendments to the 802.11 Standard.

    41.    CSIRO's letter to the IEEE should have constituted an irrevocable assurance that

each person or entity implementing the 802.11a/g Standard and willing in good faith to take a

license under RAND terms would be free from the threat of a suit for infringement of the '069

patent, and would be free from the threat of an injunction against sale of compliant products on

the basis of any alleged patent infringement.

    42.    Allowing a patent holder who has exchanged a commitment to license on RAND

terms for the benefits of having patented technology included in a standard to seek injunctive

relief against an applicant willing to take a license under RAND terms would defeat the entire

purpose of the policies of the IEEE because the patent holder would be able to use the threat of

injunction to extort royalties that are neither fair, nor reasonable, nor non-discriminatory.

Licensees would be forced to comply with unjustified royalty demands or risk losing their

substantial investments in complying with the standard. If injunctions were to be allowed,

essential patent users would be reluctant to invest in and deploy technologies until and unless

specific royalty terms were reached with every alleged essential patent holder. The public

interest would also suffer because roll-out of standard-compliant products would be delayed,

defeating one of the key purposes of standard-setting (i.e., to promote swift implementation).

43.     In September 2003, CSIRO sent a letter to Buffalo Technology (USA) Inc.

("Buffalo") regarding the '069 patent that stated: "The CSIRO patents cover products and

methods for wireless networks which comply with at least IEEE Standards 802.11(a) and

802.11(g). The IEEE is aware of our patents, and we have agreed with the IEEE that we will

grant licenses under the patents on a reasonable and non-discriminatory basis."

44.     Subsequently, CSIRO sued Buffalo for infringement of the '069 patent in the case

styled Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology

(USA), Inc et al., Case No. 6:06-cv-00324-LED, pending in this Court. At a hearing on

February 6, 2007, CSIRO represented to the Court that CSIRO has an obligation to license the

'069 patent on reasonable and non-discriminatory terms. More specifically, counsel for CSIRO

stated:

> First of all, with regard to the R.A.N.D. licensing commitment,
> CSIRO made a reasonable and nondiscriminatory licensing
> commitment to the IEEE prior to. [sic] Buffalo is going to say,
> well, that works against the injunction because you said you would
> license people, but of course the reasonable and nondiscriminatory
> licensing proposal was made and it was rejected out of hand. I
> mean, no meetings, no counter offer, nothing. But more
> importantly, I think the availability of an injunction is even more

important when a R.A.N.D. commitment is made, and let me
explain why. First of all, R.A.N.D. commitments are important to
the standard setting world. They are a good thing. They are
something the Court wants to -- I would think that legal policy
wants to encourage.

45.     CSIRO has benefited greatly from the IEEE Patent Policy, and from its

acceptance of the policy as set forth in its December 1998 letter to the IEEE concerning the '069

patent.

46.     On information and belief, once the IEEE adopted the 802.11a (and later the

802.11g) amendment(s), many persons and entities then designed and produced wireless LAN

products compliant with such standards. These persons and entities acted in reliance on the

IEEE Patent Policy and patent holders' acceptance thereof.

## MARVELL'S RELIANCE ON THE IEEE 802.11a/g STANDARD, PATENT POLICY, AND THE ASSURANCES GRANTED THEREUNDER

47.     Since at least 2002, Marvell has made substantial investments in designing and

developing wireless LAN products compliant with the 802.11a/g Standard, including Marvell's

802.11a/g WLAN products.

48.     Since at least 2004, Marvell has made integrated circuits, chip sets, and reference

designs for sale to customers for their incorporation into implementations compliant with

802.11a/g Standard.

49.     Marvell has made these investments and sold these 802.11a/g WLAN products

relying on the IEEE Patent Policy and assurances of patent holders thereunder, including CSIRO,

which were supposed to permit Marvell to develop and sell 802.11a/g WLAN products to its

customers.

50.     CSIRO, by failing to offer a license to Marvell on reasonable and non-

discriminatory terms, as set forth below, has breached its obligation to Marvell as promisee

and/or third party beneficiary of CSIRO's promise to the IEEE.  Specifically, CSIRO's and the

IEEE's actions recited above formed a contract between CSIRO and the IEEE under which

CSIRO was irrevocably obligated to grant to Marvell a license under the '069 patent.  This

contract was intended for the benefit of entities such as Marvell which is sufficiently immediate

to indicate the assumption by the contracting parties of a duty to compensate Marvell if the

benefit is lost.  Thus, Marvell was and is a promisee and/or third party beneficiary under that

contract and was and is entitled to damages and a license to the '069 patent on RAND terms.

### CSIRO'S VIOLATIONS OF ITS IRREVOCABLE ASSURANCES, HARMING MARVELL AND ITS CUSTOMERS

51.     Despite having made RAND commitments to IEEE in connection with '069

patent that IEEE has declared essential to 802.11a/g WLAN products, CSIRO has refused to

honor its commitment to license its patent on RAND terms.  Instead, it has used litigation and the

threat of injunction against customers of Marvell's 802.11a/g WLAN products, thus causing

irreparable and immeasurable harm to Marvell by creating uncertainty regarding the ability of

Marvell to continue to develop, manufacture, and sell 802.11a/g WLAN products.

52.     CSIRO has asserted claims for patent infringement and has sought or is seeking

injunctions against Marvell's customers.  On information and belief, the accusations of patent

infringement against Marvell's customers result from such customers' inclusion in their products

of Marvell's 802.11a/g WLAN products.

53.     On information and belief, CSIRO has refused to license the '069 patent to

Marvell's customers on terms that are reasonable and/or non-discriminatory.

54.     Marvell has asked CSIRO to fulfill its obligation to grant a license to Marvell on

RAND terms, and to confirm that such license would cover Marvell's customers to the extent of

their purchase or use of Marvell's 802.11a/g WLAN products.  CSIRO has failed to offer a

license in response to these demands, forcing Marvell to bring this action.

## FIRST COUNT
### (Declaration of Non-infringement)

55.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

56.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Marvell and CSIRO concerning whether Marvell and/or any of its customers for its 802.11a/g WLAN products have infringed and are infringing any valid and enforceable claim of the '069 patent.

57.    Neither Marvell nor any of Marvell's customers for its 802.11a/g WLAN products have ever manufactured, used, offered for sale and/or sold in the United States any products which infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '069 patent.

58.    Neither Marvell nor any of Marvell's customers for its 802.11a/g WLAN products have ever contributed to the infringement of, or induced others to infringe, any valid and enforceable claim of the '069 patent.

59.    By virtue of CSIRO's obligation to grant a license to the '069 patent to Marvell as set forth above, CSIRO has exhausted its rights in the '069 patent in regards to Marvell's 802.11a/g WLAN products.

60.    To the extent that any accused method, system, apparatus, and/or product has been used or manufactured by or for the United States, any claims and demands for relief by CSIRO are barred by 28 U.S.C. § 1498.

61.    By virtue of the foregoing, Marvell desires a judicial determination of its rights and duties and the rights and duties of its customers for its 802.11 a/g WLAN products with

respect to any alleged infringements of the '069 patent.

62.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## SECOND COUNT
### (Declaration of Patent Invalidity and/or Unenforceability)

63.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

64.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Marvell and its customers, on the one hand, and CSIRO, on the other hand, regarding invalidity and/or unenforceability of the claims of the '069 patent.

65.    On information and belief, the claims of the '069 patent are invalid and/or unenforceable for failing to comply with the provisions of the Patent Laws, Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, and 112, and/or the rules, regulations and law pertaining thereto.

66.    By virtue of the foregoing, Marvell desires a judicial determination on behalf of itself and its customers for its 802.11 a/g WLAN products of their rights and duties with respect to the invalidity and/or unenforceability of the claims of the '069 patent.

67.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## THIRD COUNT
### (Declaratory Relief in the Alternative- Declaration of License)

68.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

69.    CSIRO's and the IEEE's actions recited above formed a contract between CSIRO

and the IEEE under which CSIRO was irrevocably obligated to grant to Marvell a license under the '069 patent, as described herein.  Marvell was and is a promisee and/or third party beneficiary under that contract and was and is entitled to a license to the '069 patent pursuant to CSIRO's 1998 letter to the IEEE and pursuant to the IEEE Patent Policy.

70.    The remaining terms of such contract require CSIRO to participate in a good faith negotiation with Marvell concerning the amount of a reasonable rate and terms for the '069 patent license.  Consistent with the IEEE Patent Policy, the parties must recognize in such negotiation that CSIRO has only one patent that is allegedly essential to practice the IEEE 802.11a/g Standard, and that Marvell has already given consideration to other holders of patents essential to practice the IEEE 802.11a/g Standard on RAND terms.

71.    CSIRO has refused to negotiate in good faith with Marvell concerning a reasonable rate and terms for a license to the '069 patent.

72.    By virtue of the foregoing, Marvell desires a judicial determination on behalf of itself and its customers for its 802.11 a/g WLAN products of their rights and duties with respect to the declaration of a license for the technology covered by the '069 patent.

73.    A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## FOURTH COUNT
### (Breach of Contract in the Alternative)

74.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

75.    CSIRO's and the IEEE's actions recited above formed a contract between CSIRO and the IEEE under which CSIRO was irrevocably obligated to grant to Marvell a license under the '069 patent, as described herein.  Marvell was and is a promisee and/or third party

beneficiary under that contract.  CSIRO, by failing to offer a license to Marvell on reasonable and non-discriminatory terms, as set forth above, has breached its obligation to Marvell as promisee and/or third party beneficiary of CSIRO's promise to the IEEE.

76.    All conditions precedent to CSIRO's obligations under the contract have been performed or have been excused.

77.    As a consequence, Marvell is entitled to damages accruing from CSIRO's breach of its contract with IEEE, to which Marvell is a third party beneficiary.

**FIFTH COUNT**
**(Breach of Contract in the Alternative - Specific Performance)**

78.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

79.    CSIRO, by failing to offer a license to Marvell on reasonable and non-discriminatory terms, as set forth above, has breached its obligation to Marvell as promisee and/or third party beneficiary of CSIRO's promise to the IEEE.

80.    All conditions precedent to CSIRO's obligations under the contract have been performed or have been excused.

81.    As a consequence, Marvell is entitled to specific performance of CSIRO's contract with IEEE, namely, grant of a license to the '069 patent consistent with the IEEE Patent Policy as set forth in the allegations above.

82.    As a further consequence, the Court should enjoin CSIRO from prosecuting or continuing to prosecute any and all suits for alleged infringement of the '069 patent against any of Marvell's customers based on Marvell's 802.11 a/g WLAN products.

## SIXTH COUNT
### (Declaration in the Alternative of Promissory Estoppel)

83.    Marvell incorporates paragraphs 1-54 above by reference as though fully set forth herein.

84.    CSIRO's promise to abide by the IEEE Patent Policy and to grant licenses under the '069 patent to any person or entity that practices the IEEE 802.11a/g Standard was a promise clear and unambiguous in its terms.

85.    Both the IEEE and Marvell relied on this promise.

86.    Marvell's reliance on this promise was both reasonable and foreseeable to CSIRO.

87.    Marvell has been injured by its reliance on this promise coupled with CSIRO's failure to abide by its promise and actions in violation of its promise.

88.    Marvell will continue to be so harmed unless the Court compels CSIRO to make good on its promise, and cease filing, prosecuting or threatening suits or taking other actions or making public statements in breach of its promise.

89.    CSIRO, by failing to offer a license to Marvell on reasonable and non-discriminatory terms, as set forth above, has breached its promise on which Marvell reasonably and forseeably relied.

90.    As a consequence, Marvell is entitled to specific performance of CSIRO's promise to the IEEE, namely, a license to the '069 patent.

91.    As a further consequence, the Court should enjoin CSIRO from continuing to prosecute and from filing any and all suits for alleged infringement of the '069 patent against Marvell or against any of Marvell's customers on account of their use of Marvell technology compliant with the IEEE 802.11a/g Standard.

92.    This Court is authorized to award declaratory and injunctive relief on this Count under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, because there is a substantial controversy between parties who have adverse legal interests of sufficient immediacy and reality to warrant a judicial declaration of rights and duties; an actual controversy exists and will continue to exist until such time as the Court declares the existence of Marvell's legal rights vis-à-vis CSIRO, and CSIRO's actions in violation of the promise already have harmed Marvell.

## PRAYER FOR RELIEF

WHEREFORE, Marvell prays for the following relief:

A.    A declaration that Marvell does not infringe any claim of the '069 patent.

B.    A declaration that Marvell's customers do not infringe any claim of the '069 patent.

C.    A declaration that all claims of the '069 patent are invalid and/or unenforceable.

D.    An injunction restraining CSIRO, and its officers, directors, members, employees or anyone acting in concert therewith, from continuing or threatening to prosecute and from filing or threatening to file any claims for patent infringement of the '069 patent against Marvell or any of Marvell's customers.

E.    An injunction restraining CSIRO, and its officers, directors, members, employees or anyone acting in concert therewith, from seeking any form of injunction, including without limitation temporary, preliminary, or permanent, against Marvell or any of Marvell's customers based on the '069 patent.

F.    Damages accruing from CSIRO's breach of its contract with IEEE, to which Marvell is a third party beneficiary.

G.    In the event Marvell is found to infringe the '069 patent and the '069 patent is

found to be valid and enforceable, a declaration that Marvell is entitled to a license for Marvell and its customers to the '069 patent from CSIRO on RAND terms and an order compelling specific performance and requiring that CSIRO grant Marvell and its customers a license under the '069 patent on RAND terms, and that the RAND terms must recognize that CSIRO has only one patent that is allegedly essential to practice the IEEE 802.11a/g Standard and that Marvell has already given consideration to other holders of patents essential to practice the IEEE 802.11a/g Standard on RAND terms.

H.     In the event Marvell is found to infringe the '069 patent and the '069 patent is found to be valid and enforceable, a declaration that CSIRO is estopped from denying the existence of an obligation to Marvell and its customers to license the '069 patent on reasonable and non-discriminatory terms as set forth in paragraph G.

I.     For such other and further relief as this Court deems just.

**[INTENTIONALLY LEFT BLANK]**

DATED:  May 4, 2007                Respectfully submitted,

                                   /s/ Andy Tindel w/ Permission of Lead Attorney
                                   ANDY TINDEL
                                   State Bar No. 20054500
                                   PROVOST UMPHREY LAW FIRM, L.L.P.
                                   112 East Line Street, Suite 304
                                   Tyler, Texas 75702
                                   Telephone: (903) 596-0900
                                   Facsimile: (903) 596-0909
                                   E-mail: atindel@andytindel.com

                                   Warren S. Heit (Lead Attorney)
                                   (*pro hac vice* application to be filed)
                                   CA State Bar No. 164658
                                   wheit@whitecase.com

                                   Taryn Lam (*pro hac vice* application to be filed)
                                   CA State Bar No. 236124
                                   tlam@whitecase.com

                                   WHITE & CASE LLP
                                   3000 El Camino Real
                                   5 Palo Alto Square, 9th Floor
                                   Palo Alto, CA 94306
                                   Telephone:  (650) 213-0300
                                   Facsimile:  (650) 213-8158

                                   Attorneys for Plaintiffs,
                                   MARVELL SEMICONDUCTOR, INC.
                                   MARVELL ASIA PTE., LTD.
                                   MARVELL INTL., LTD.