**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| MARVELL SEMICONDUCTOR, INC. MARVELL ASIA PTE., LTD., and MARVELL INTL., LTD, <br><br> Plaintiffs and Counterdefendants, <br><br> v. <br><br> COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION, <br><br> Defendant and Counterclaimant. | Civil Action No. 6-07-CV-204 LED <br><br> **Jury Trial Demanded** |

**MOTION TO COMPEL SONY COMPUTER ENTERTAINMENT AMERICA, INC. AND SONY ELECTRONICS, INC. TO PRODUCE 30(B)(6) DEPONENTS**

**I.    INTRODUCTION**

Defendant and Counterclaimant Commonwealth Scientific and Industrial Research Organisation ("CSIRO") brings this motion to compel third-parties Sony Computer Entertainment America, Inc. ("SCEA") and Sony Electronics, Inc. ("SEL") (collectively, "Sony entities") to each appear for a deposition in compliance with two subpoenas served by CSIRO. Chips made by Plaintiffs and Counterdefendants Marvell Semiconductor, Inc., Marvell Asia Ptd., Ltd., and Marvell Intl., Ltd., ("Marvell") are in Sony products such as the PlayStation 3 ("PS3"). CSIRO seeks to develop evidence regarding infringement and the proper measure of damages for Marvell's infringement through documents from Marvell's customers, such as Sony, showing the importance of the accused chips and the profitability of devices utilizing the accused chips. To this end, CSIRO served both SCEA and SEL with two subpoenas to testify at 30(b)(6) depositions. The subpoenas merely sought verification that documents printed from SCEA's and

1

SEL's websites were authentic business records of the respective Sony entities. However, SCEA and SEL affirmatively chose to disregard both subpoenas served on each entity and neither entity appeared for the noticed depositions.

## II.     BACKGROUND

On November 23, 2009, CSIRO served both SCEA and SEL with subpoenas and 30(b)(6) notices. Rambin Decl., Exhs. A, B (first set of subpoenas and 30(b)(6) notices).[1] The notice asked SCEA and SEL to designate and produce a representative to give testimony regarding documents printed from the Sony family websites, produced in this litigation, and attached to the notice.

After SCEA received the notice, CSIRO offered to conduct the deposition at a location more convenient for SCEA, such as California.[2] CSIRO also stated that, in lieu of providing a 30(b)(6) deponent, SCEA could provide a declaration pursuant to Rules 803(6) and 902(11) of the Federal Rules of Civil Procedure. SCEA expressed some willingness to give a declaration, but insisted that it be limited to SCEA's website. SCEA maintained this position despite being reminded that "possession, custody or control," included matters they had the right or practical ability to obtain – such as PlayStation information on Sony websites.

SEL took the same positions as SCEA. Both SCEA and SEL indicated before the scheduled depositions that they did not plan to attend. Rambin Decl., Exhs. C, D, E, (correspondence with SCEA); Exh. F (correspondence with SEL). On the dates of their respective noticed depositions, neither SCEA, nor SEL produced a deponent. *See* Rambin Decl.,

---

[1] All exhibits referenced herein are attached to the accompanying declaration of D. Jeffrey Rambin.

[2] The first page of the notice specifically said as much: "The deposition will be conducted at the offices of Capshaw DeRieux LLP at 1127 Judson Road, Suite 200, Longview, Texas 75601, or other such place as agreed upon by the parties." Exh. A at 6. The first page of the notice to SEL had the exact same language. Exh. B at 6.

Exh. G (first SCEA Certificate of Non-Appearance); Exh. H (first SEL Certificate of Non-Appearance).

Thereafter, on January 21, 2010, virtually identical subpoenas and 30(b)(6) notices were served on SCEA and SEL, changing the dates, times, and locations to better accommodate SCEA and SEL. Rambin Decl., Exhs. I, J (second set of subpoenas and 30(b)(6) notices); *compare* Exhs. I, J (second set of subpoenas and 30(b)(6) notices) *with* Exhs. A, B (first set of subpoenas and 30(b)(6) notices). The Sony entities, again, objected indicating they would not appear, and on the noticed dates, SCEA and SEL again failed to produce a deponent. Rambin Decl., Exhs. K (second SCEA Certificate of Non-Appearance); Exh. L (second SEL Certificate of Non-Appearance). CSIRO has made every effort to resolve this without Court intervention. Matters were at an impasse with SCEA and SEL.

CSIRO would have brought this motion to compel at that point. Marvell, at the behest of Sony, then made what was thought to be an agreement to resolve this issue and keep its customer -- the Sony entities -- from being the subject of motion practice: "[p]ending review of the specific documents, Marvell is willing to agree to stipulate the Sony documents are authentic and that they are business records. Marvell is expressly not agreeing to the admissibility of these documents and reserves its right to move to exclude their admission into evidence." Rambin Decl., Exh. M (correspondence with Marvell regarding Sony documents). CSIRO promptly provided the draft stipulation and Bates numbers. Rambin Decl., Exh. N (2/4/2010 correspondence with Marvell). Marvell first responded requesting that CSIRO limit the number of documents at issue in the stipulation. *Id.* CSIRO complied and sent Marvell a second draft stipulation with less than one-third of the original documents identified. *Id.* (2/12/2010 correspondence with Marvell). Marvell failed to respond. Finally, after multiple requests as to

3

the status of the stipulation, Marvell indicated that it believed that "[i]n the interest of efficiency, the Sony documents should be included in the parties' later discussions and meet and confer efforts on authentication issues." *Id.* (2/18/2010 and 2/22/2010 correspondence with Marvell).

If there was ever any real progress in the initial pledge by Marvell, discussions were now moving backwards. The positions of SCEA and SEL remained unchanged. In view of these circumstances, CSIRO was on the verge of filing this motion.

At the last minute, Marvell gave direct pledges that the matter was, indeed resolved. The pledges were given because Sony wanted something from CSIRO: an answer extension in another case, *CSIRO v. Sony*, 6:09-cv-00400-LED. The deal was negotiated with Mr. Warren Heit who, in addition to being lead counsel for Marvell herein, also appeared as lead counsel for Sony in *CSIRO v. Sony*. Thus, the pledges were given as an inducement for CSIRO to grant Sony an extension to file an answer in *CSIRO v. Sony*. In this case, Marvell agreed to the form of CSIRO's proposed stipulation. In *CSIRO v. Sony*, Mr, Heit, wearing both his Sony and Marvell hats, stated that Marvell would be providing the stipulation and that the issue was thus "moot." *See* Exhibit CC (correspondence with Warren Heit regarding the extension-for-stipulation deal); Exhibit DD (correspondence between CSIRO and Marvell counsel regarding the stipulation, at February 25, 2010). Note, however, that Mr. Heit's firm made it clear that, though they represent Sony in *CSIRO v. Sony*, they do not represent Sony as to the documents at issue in this motion. Exhibit DD, at March 12.

Marvell has broken its word, forcing CSIRO to compel the Sony entities to give the depositions they should have given in the first place. Once Mr. Heit as counsel for Sony got the extension, Mr. Heit and those under his direction as counsel for Marvell proceeded to quibble about first one document and another. On March 11, prior agreement to the language

notwithstanding, Marvell changed the language of the stipulation in three material ways.  Having justified their own delay in giving a final answer with their ostensible need to download and review the documents, Marvell inserted language that it would only stipulate to certain records if CSIRO gave a representation about downloading them from the web.  CSIRO had certainly done so, but that's not the point.  If Marvell was going to rely on CSIRO's word, Marvell should have signed the stipulation weeks ago.  But there was another catch: Marvell refused to stipulate to categories of documents as non-hearsay business records.  Despite their prior agreement, Marvell would only stipulate as to authenticity.  The last straw is that Marvell added additional language about reserving its rights to object to the documents for trial purposes.  See Exhibit DD; Exhibit EE (Marvell's March, 11, 2010 proposed changes to the stipulation).  Enough is enough.

CSIRO now files the instant Motion seeking an Order from the Court compelling SCEA and SEL to designate a 30(b)(6) representative to appear for a deposition.  CSIRO also respectfully requests that the Court order SCEA and SEL to pay CSIRO's costs for preparing and filing the instant Motion.

## III.   LEGAL STANDARD

Since the 30(b)(6) deposition deals with documents, it is appropriate to determine which documents are within the Sony entities' possession, custody, or control for discovery purposes.  The standard is whether SCEA and SEL have the "right, authority or practical ability to obtain" the documents.  *Kamatani v. BenQ*, No. 2:03-cv-437, 2005 WL 2455825, *5 (E.D. Tex. 2005).  Turning next to the scope of 30(b)(6) depositions, the duty of preparation includes reviewing information that is reasonably available, including documents.  *Brazos River Authority v. GE Ionics*, 469 F.3d 416, 433 (5th Cir. 2006).  What is more, the scope of the deposition includes the corporation's subjective belief and opinions. *Id.*

The dispute does not appear to be over the discoverability *per se* of the information, but rather the responsibility of SCEA and SEL to speak to PlayStation marketing and financials on Sony websites. To the extent that discoverability itself is in dispute, the scope of discovery is liberal. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 756 (E.D. Tex. 2004). "Relevant" matters for purposes of discovery include matters that would be inadmissible at trial so long as they are "'reasonably calculated to lead to the discovery of admissible evidence.'" *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 251 F.R.D. 238, 241 (E.D. Tex. 2008) (citing FED. R. CIV. P. 26(b)(1)).

To the extent subpoena range and or service is at issue, these questions have already been addressed in the Eastern District of Texas in *MicroUnity Sys. Eng'g, Inc. v. Dell Inc.* Rambin Decl., Exh. O (Transcript of Motion to Quash, *MicroUnity Sys. Eng'g, Inc. v. Dell Inc.,* 2:04-cv-120 (E.D. Tex. 2005)); *see also* Rambin, Decl., Exh. D (Order on Motion to Quash, *MicroUnity Sys. Eng'g, Inc. v. Dell Inc.,* 2:04-cv-120 (E.D. Tex. Aug. 5, 2005)). As the transcript of that hearing shows, Intel had served a third party 30(b)(6) deposition notice on AMD's agent for service of process in Dallas. *Id.* at 4:10-19. The Court found that this was sufficient to compel a deposition in the Eastern District of Texas. *Id.*, at 10:24-11:22.

Neither SCEA nor SEL filed a motion for protection pursuant to FED. R. CIV. P. 26(c). Likewise, neither SCEA nor SEL filed a motion to quash pursuant to Fed. R. Civ. P. 45(c)(3). CSIRO seeks an order compelling compliance with the notice and subpoena pursuant to FED. R. CIV. P. 37 generally, and specifically provisions (a)(3)(B)(ii), and (d). CSIRO further moves for contempt under Fed. R. Civ. P. 45(e)

## IV. DISCUSSION

In an age where information is readily available over the internet, parties should not be permitted to make admissibility of their own statements such a difficult proposition. Indeed, it need not be difficult: Apple and Palm gave declarations concerning their documents. SCEA and SEL, on the other hand, simply failed to appear for properly noticed depositions. The "other entities" for whom SCEA and SEL said they could not prove up public documents are, with two exceptions, other Sony entities:

1. ***Sony Corporation*** ("Sony") is the global parent corporation based in Tokyo, Japan. Rambin Decl., Exh. P at 20-21. Sony maintains an investor relations page which has financial and corporate strategy information, including information on PlayStation systems. Rambin Decl., Exh. Q.[3] Sony markets the PS3 on its website. Rambin Decl., Exh. R.[4]

2. ***Sony Corporation of America*** ("SCA") is a wholly-owned U.S. subsidiary of Sony and is based in New York. Rambin Decl., Exh. S (SCA Corporate Fact Sheet).[5] SCA markets the PS3 on its website. Rambin Decl., Exh. T.[6]

3. ***Sony Computer Entertainment, Inc***. ("SCEI" or "SCE") is another wholly-owned subsidiary of Sony. Rambin Decl., Exh,. P at 30. Its role is to develop, produce, market,

---

[3] Available at http://www.sony.net/SonyInfo/IR/info/strategy/message.html, last accessed February 25, 2010.
[4] Available at www.sony.net, last accessed February 25, 2010.
[5] Available at http://www.sony.com/SCA/corporate.shtml, last accessed February 25, 2010.
[6] Available at www.sony.com, last accessed February 25, 2010.

and distribute PlayStation gaming systems and related software. *Id*., at 24. SCEI markets the PS3 on its websites as well. Rambin Decl., Exh. U.[7]

4. ***Sony Computer Entertainment America, Inc***. ("SCEA"), in turn, is a wholly-owned subsidiary of SCEI and performs the same functions concerning PlayStation and PlayStation-related products. Rambin, Decl., Exh. V.[8] SCEA is claimed by SCA as one of its "Principal US businesses." Rambin Decl., Exh. S. SCEA also markets the PS3 on its website. Rambin Decl., Exh. W.[9] SCEA does not have an investor relations page, nor does its website have corporate strategy information.

5. ***Sony Electronics, Inc***. ("SEL") is the largest segment of SCA. Rambin Decl., Exh. X.[10] SEL's operations include research and development, design, engineering, manufacturing, sales, marketing, distribution and customer service. *Id.*. SEL maintains the SonyStyle online store, where it markets the PS3. Rambin Decl., Exh. Y.[11]

These five entities have related finances, a consolidated organizational structure, and overlapping officers. Sir Howard Stringer is the chairman and CEO of both Sony and SCA. Rambin Decl., Exh. Z; Exh. P at 87. Nicole Silegman is the EVP and General Counsel of both Sony and SCA. Rambin Decl., Exh. P at 93; Exh. Z. Kazuo Hirai is the Executive Vice

---

[7] Available at http://www.scei.co.jp/index_e.html (English version), and http://www.playstation.com/country-selector/, the global PlayStation portal maintained by SCEI. Both last accessed February 25, 2010.
[8] Available at http://www.us.playstation.com/Corporate/About, last accessed February 25, 2010.
[9] Available at http://www.us.playstation.com/PS3 and http://www.us.playstation.com/PS3/dearplaystation/?ILClps&FTTR=PS3Landing_120GBDetails. Both last accessed February 25, 2010.
[10] Available at http://news.sel.sony.com/en/corporate_information/overview, last accessed February 25, 2010.
[11] Available at https://www.sonystyle.com/webapp/wcs/stores/servlet/ProductDisplay?catalogId=10551&storeId=10151&langId=-1&productId=8198552921666027329#overview, last accessed February 25, 2010..

President and the President of Networked Products & Services Group for Sony Corporation, as well as the President and Group Chief Executive Officer of SCEI and the Chairman of SCEA. Rambin Decl., Exh. P at 94; Exh. Z.[12]  These entities engage in transactions to swap losses and gains among themselves for tax planning purposes.  Rambin Decl., Exh. P at 82.  As stated above, SCEA is claimed by SCEI as a wholly owned subsidiary, by SCA as a principal business, and Sony as a wholly owned subsidiary owned directly or indirectly.  In addition, to these interrelationships, Sony has created specific "business groups" that cut across and include various Sony operating and holding companies.  Rambin Decl., Exh. AA.[13]  For example, SCEI is part of the Networked Products and Services Group. *Id.*  Broader even than such *groups* appear to be *platforms*.  One of these platforms is the "Global Sales and Marketing Platform." *Id.* As the next section of this brief shows, the platform approach is profitable for Sony.

> **V.     The Remaining Entity: Times of UK article quoting Kazuo Hirai**

The remaining entity is a newspaper.  Kazuo Hirai, the Sony EVP, SCEI CEO, and SCEA Chairman gave an interview to the Times of the United Kingdom.  Mr. Hirai stated that Sony looks at the PS3 as having a ten year life cycle, making it too early to make a final judgment on success or lack thereof (the PS3 was introduced in 2006, and an updated model was introduced in Fall, 2009).  The key question is this:

> **It's well known that Sony loses money on every PS3 it sells. Will that still be the case with the new machine?**
>
> If you're just talking about the hardware alone, the quick answer is yes. That makes good headlines, but I don't actually know that that's the true nature of the business that we're all in, whether it's PlayStation, Xbox or the Wii. *I think the better indicator is to look*

---

[12] Available at http://www.us.playstation.com/Corporate/About/Management/kazhirai.html, last accessed February 25, 2010.
[13] Available at http://www.sony.net/SonyInfo/CorporateInfo/Data/organization.html, last accessed February 25, 2010.

> *at the business as a whole platform, to ask: are you profitable in terms of the hardware, software and peripherals.* ***And the answer to that question is yes on a gross profit level since the last fiscal year.***

Rambin Decl., Exh. BB.[14]

### VI. The documents are in the possession of SCEA and SEL, and hence are proper 30(b)(6) subjects.

The Sony entities work together to make and market the PS3 and PS3 platform products. As Kaz Hirai said, the PS3 platform is profitable. As key members of that platform, SCEA and SEL have the practical ability to speak to PS3 documents.

It's not a question of whether they can physically obtain the documents. The information SCEA and SEL are being asked to verify is publicly accessible on the Sony entities' websites, available for anyone to access and download at any time. CSIRO did download it, and provided it on disc to SCEA and SEL.

So, although they have the documents in hand, SCEA and SEL refuse to speak to them. *Kamatani* held that a joint venturer with a 50% stake had the duty to obtain and make discovery responses on documents within the possession of the fellow venturer. *Brazos River Authority* holds that a 30(b)(6) deponent must prepare for deposition with all information at their disposal, and must be ready to give the corporation's subjective belief on matters. 469 F.3d at 432-33.[15] In

---

[14] Available at http://technology.timesonline.co.uk/tol/news/tech_and_web/article6808050.ece, last accessed February 25, 2010.

[15] Holding [with notes and citations omitted]:

> Therefore, the deponent " 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.' "  "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved."

light of this authority, and given all of the publically available information about the relationship of the Sony companies, it is difficult to understand how SCEA and SEL can deny their ability to authenticate these documents as CSIRO has requested. SCEA is not being asked to vouch for products specific to other branches of the Sony tree. Instead, SCEA is being asked about marketing and financial reporting concerning its own products. Similarly, SEL markets and sells the PS3, and thus is in a position to vouch for documents related to the PS3. SCEA benefits from the PS3-related efforts of SEL and *vice versa*. Likewise, they both work with, and profit from the work of, other branches of the Sony family tree. By design, ***all members of the Sony family speak with a common voice on the PS3***. Consequently, it strains credulity for SCEA and SEL to claim ignorance about *publically available* information on the PS3 platform published by corporate parents and siblings.

If there is one man who embodies that common voice, it is Kaz Hirai, Sony EVP with authority over the Networked Products and Services Group, SCEI CEO, and SCEA Chairman. Without question, a properly prepared 30(b)(6) deponent could testify to the accuracy of the newspaper statements attributed to Mr. Hirai. Indeed Mr. Hirai himself could (and perhaps should) be offered as the 30(b)(6) deponent, or if needed to verify his statements, someone who has spoken directly with him. To be blunt though, CSIRO believes that the information contained in the documents (*e.g*, videos and other marketing of the PS3 featuring wireless capabilities, profitability of the PS3 platform, *etc*.) is *common knowledge* across all Sony entities.

---

The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources. … When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions.

Indeed, it must be common knowledge: Sony puts these documents on the web for the whole world to see. SCEA and SEL claim that they *can't* speak to these documents. It's more accurate to say they *won't*. CSIRO asks this Court to turn "won't" into "SHALL."

## V. CONCLUSION

Both SCEA and SEL should be ordered to appear for a 30(b)(6) deposition forthwith at the offices of Capshaw DeRieux, LLP in Longview, Texas. Further, both Sony entities should be held in contempt for failure to appear and be sanctioned for CSIRO's costs in bringing this motion.

DATED: March 15, 2010                Respectfully submitted,

By:     /s/ D. Jeffrey Rambin
    S. Calvin Capshaw
    State Bar No. 03783900
    ccapshaw@capshawlaw.com
    Elizabeth L. DeRieux
    State Bar No. 05770585
    ederieux@capshawlaw.com
    D. Jeffrey Rambin
    State Bar No. 00791478
    jrambin@capshawlaw.com
    Jessica L. Hannah
    CA State Bar No. 261802
    jhannah@capshawlaw.com
    Capshaw DeRieux, L.L.P.
    1127 Judson Road, Suite 220
    Longview, Texas 75601
    Telephone: (903) 236-9800
    Facsimile: (903) 236-8787

Gary H. Ritchey
CA State Bar No. 136209
ghritchey@townsend.com
Jordan Trent Jones
CA State Bar No. 166600
jtjones@townsend.com
John E. Lord
CA State Bar No. 216111
jelord@townsend.com
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
Tel.: (650) 326-2400
Fax: (650) 326-2422

James M. Wagstaffe
CA Bar No. 95535
wagstaffe@kerrwagstaffe.com
Michael Ng
CA Bar No. 237915
mng@kerrwagstaffe.com
KERR & WAGSTAFFE LLP
100 Spear Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 371-8500
Facsimile:  (415) 371-0500

**Attorneys for Defendant,
COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH ORGANISATION**

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h). The motion is opposed. A personal conference was conducted via phone on January 20, 2010 with SCEA and SEL. Jennifer Liu and Dan Herp participated for SCEA, Jeff Rambin for CSIRO (Mike Ng was available for several time slots, however SCEA did not schedule a time, but rather called Mr. Rambin directly at an hour when Mr. Ng was not available). Aaron Muranaka participated for SEL, Mike Ng and Jeff Rambin for CSIRO. These calls were preceded and followed by other calls and emails as reflected in the correspondence attached to the motion. Agreement could not be reached for reasons set out in the motion, inter alia, neither SCEA nor SEL thought they should appear for a deposition in Texas, and neither thought they should answer for the documents of "other entities." Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ D. Jeffrey Rambin
D. Jeffrey Rambin

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served the 15th day of March, 2010, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3), or to the extent not available in that manner, counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date. In particular, Dan Herp for SCEA and Aaron Muranaka for SEL will be served via email and via first class mail.

/s/ D. Jeffrey Rambin
D. Jeffrey Rambin